**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT, IN AND FOR WALTON COUNTY, FLORIDA**

**AMY LAMB,**

**Plaintiff,**

**v.**

**WALTON COUNTY SCHOOL BOARD,**

**Defendant.**

______________________________________/

**CASE NO.: 20-CA-**
**FLA BAR NO.: 0739685**

# COMPLAINT

Plaintiff, AMY LAMB, hereby sues Defendant, WALTON COUNTY SCHOOL BOARD, and alleges:

## NATURE OF THE ACTION

1. This is an action brought under the Florida Whistleblower Act codified at Chapter 112, Florida Statutes.

2. This action involves claims which are, individually, in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interest.

## THE PARTIES

3. Plaintiff, AMY LAMB, was employed by Defendant and when she began her employment was a resident of the States of Florida, while employed Plaintiff became a resident of the state of Alabama. Plaintiff is a member of a protected class due to her reports of malfeasance, misfeasance and/or gross misconduct and other matters protected under §112.3187. Plaintiff was retaliated against after reporting Defendant's unlawful practices and/or matter of public concern.

4. At all times pertinent hereto, Defendant, WALTON COUNTY SCHOOL BOARD, has been organized and existing under the laws of the State of Florida. At all times pertinent to this

EXHIBIT "1"

action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action, if any. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, a protected whistleblower, began her employment with Defendant on or about May 12, 2014 and held the position of Insurance Benefits Specialist at the time of her wrongful constructive termination on June 30, 2020.

7. Despite her stellar work performance during her employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her protected whistleblowing activities and other disclosures. Further, Defendant took adverse personal action against her because she disclosed Defendants' gross mismanagement, malfeasance, misfeasance, gross waste of public funds, gross neglect of duty, and/ or violation of one or more laws, rules, or regulations.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Superintendent Russell Hughes and HR Director Candy Bodie.

9. Plaintiff was a member of Defendant's Insurance Committee responsible for reviewing bid submissions, as was John "Brad" Hoard, Defendant's Insurance Consultant.

10. Defendant propounded a Request for Proposal for a bid for telemedicine services. Defendant received two bids in response, one from Teledoc Telemedicine Services ("Teladoc"), represented by Gregory Majors, and another from 1800MD, represented by Brad Hoard.

11. Hoard, as an agent of Defendant with advisory power over the bids, was not permitted to gain income from bids. However, he was to be paid a commission if 1800MD was awarded the bid.

12. The bidding period closed on July 9, 2018.

13. After the bidding period had closed, Hoard realized that the Teladoc had given a bid with more favorable terms including unlimited household size for benefits where the 1800MD bid restricted household size to six (6).

14. Hoard then contacted 1800MD and illegally informed it of the details of Teladoc's bid details, and illegally altered and re-submitted the bid by removing the household size limitation in order to make the 1800MD bid more attractive so he could earn his commission.

15. After Hoard's alterations, the bids were presented and voted on by Defendant's Insurance Committee which approved 1800MD's bid.

16. After the process, Majors notified Plaintiff that he had been made aware of Hoard's unauthorized disclosure and bid tampering in violation of §838.22, Florida Statutes. This prompted Plaintiff to call 1800MD, which is how she learned Hoard was their agent of record and was receiving a commission.

17. Thereafter, Defendant's Superintendent Hughes called Plaintiff into a meeting during which he asked her what happened during the bid process. He also asked her to provide a written statement about the matters above, which she prepared and submitted to the Defendant.

18. In or around March of 2019, Plaintiff met with Superintendent Hughes who determined that Hoard's contract should not be renewed.

19. Plaintiff was also interviewed by FDLE, which was not part of Plaintiff's ordinary job duties, about Hoard's behavior and relying on her testimony at least in part, Hoard was arrested



EXHIBIT "1"

and charged with Bid Tampering by Public Servant Contractor and Organized Fraud on October 21, 2019.

20. Plaintiff's reporting also caused Defendant's agent Rob Neale to stop receiving commissions, which caused him and his family to be angry with and retaliate against Plaintiff. Robert Neal's wife, Cindy Neale, is the principal at Defendant's Maude Saunders Elementary. Cindy Neale is also the sister to HR Director Candy Bodie. Cindy Neale and Candy Bodie are also first cousins with prior HR Director, Sonya Alford.

21. Candy Bodie was one of the main employees who retaliated against Plaintiff after her reporting and/or objections as described above. In fact, Bodie's entire demeanor toward Plaintiff changed after she reported the illegal behavior described above. Bodie thereafter avoided Plaintiff, refused to speak with her, and even refused to look at her in the hallways when they passed one another. This is a stark contrast to the treatment of Plaintiff pre-reporting. For example, in 2018, she thanked Plaintiff for being "awesome… from the bottom of [her] heart… going above and beyond to help [Defendant's] employees."

22. Plaintiff reported the hostility from Bodie to the prior HR Director, Sonya Alford, several times. Plaintiff even requested Alford and CFO Stephanie Hofheinz move her to a different department (finance) away from Bodie which Defendant denied, even though it was the department Plaintiff's position previously fell under. Alford did nothing to curtail Bodie's behavior. Instead, Defendant promoted her to HR Director where her mistreatment of Plaintiff only intensified.

23. HR Director Bodie also imposed extra requirements on Plaintiff's leave requests. For example, Plaintiff provided Defendant a doctor's note excusing her from work until June 8, 2020, Plaintiff was caught up on all bills and employee enrollment. However, Bodie required



EXHIBIT "1"

Plaintiff's May leave request to be reviewed by Superintendent Hughes, who questioned Plaintiff's leave request.

24. The leave request was ultimately granted, but Plaintiff requested an extension and provided another doctor's note. The doctor wrote that the request was due to "anxiety/ stress related to [her] work environment" and did not include a return to work date.

25. However, Plaintiff had ample annual leave in the amount of 212 hours, and the leave request should not have been an issue, but Bodie continued to question and hassle Plaintiff about her leave requests and made it difficult for Plaintiff to submit them and get them approved timely.

26. Rob Neale also sent Plaintiff multiple nasty and unprofessional e-mails after her reporting and Defendant did nothing to address them.

27. On or around June 23, 2020, Plaintiff submitted another complaint to the Department of Education's (DOE) Office of Inspector General for Defendant's retaliation against her due to her previous reporting and to report possible nepotism. Specifically, Superintendent Hughes hired his wife, Lori Hughes, over more qualified candidates and approved a $40,000 raise for her. It was not part of Plaintiff's ordinary job duties to report this matter of significant public concern to the DOE.

28. By that time, Plaintiff's health was taking a serious toll from the treatment she was receiving at work and Defendant showed no signs that it was willing to work with her to rectify the situation. The conditions of Plaintiff's employment became too much for her to bear and no reasonable person would have stayed in Defendant's employ given these circumstances. Thus, on June 30, 2020, Plaintiff was constructively discharged.



EXHIBIT "1"

29. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

**COUNT I**
**PUBLIC WHISTLEBLOWER RETALIATION**

30. Paragraphs 1 through 29 above are incorporated herein by reference.

31. This count sets forth a claim against Defendant under §112.3187, et seq., Florida Statutes.

32. Plaintiff was a public employee protected under Chapter 112, Florida Statutes.

33. As stated more specifically in part above, Plaintiff reported and disclosed violations of rules, regulations and laws, and/or malfeasance, misfeasance and/or gross misconduct to persons both inside and outside of her normal chain of command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules, regulations and laws that she reported. Plaintiff also disclosed this information when she participated in investigations, hearings, or other agency inquiries. Plaintiff reported malfeasance, misfeasance, and other acts specifically outlined in §112.3187(5), Florida Statutes.

34. After reporting these matters and/or participating in investigations, hearings, or other agency inquiries, as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above including without limitation her termination.

35. Plaintiff's constructive discharge was a result of her reporting violations of rules, regulations or laws, and/or her reporting malfeasance, misfeasance or gross misconduct, and/or her participating in investigations, hearings or other inquiries, specified in part above.



EXHIBIT "1"

36. The actions of all employees within Defendant who affected Plaintiff's employment adversely did so at least in part in retaliation against her for her "whistleblowing" activities.

37. As a direct and proximate result of the actions taken against her by Defendant, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, emotional pain and suffering, loss of capacity for the enjoyment of life, and other tangible damages. These damages have occurred in the past, are occurring at present and will occur in the future. Plaintiff is entitled to injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff awarding all legally-available damages for emotional pain and suffering to Plaintiff from Defendant for Defendant's violations of law enumerated herein.

(e) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;



EXHIBIT "1"

(f) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(g) award Plaintiff interest where appropriate; and

(h) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 1st day of December 2020.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF



EXHIBIT "1"